UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| STEPHEN BOTCHKAI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:03-CV-0821 AS |
| | ) | |
| BRUCE SCHWEIZER, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This case arises out of a dispute between a union member and his union representative. On October 23, 2003, Plaintiff Stephen Botchkai, a member of UAW Local No. 5, filed a complaint alleging that Defendant Bruce Schweizer, Chairman of UAW Local No. 5, interfered with Plaintiff's right to file a grievance against his previous employer. Parties have filed numerous motions in this case, including a motion to rescind the general release and two motions for summary judgment. This Court now enters its report and recommendation on all pending motions.

### I.   RELEVANT BACKGROUND

On February 22, 2002, Plaintiff began working for AM General LLC as a production and maintenance employee. The UAW Local No. 5 labor union ("UAW"), of which Plaintiff was a member, represents AM General's production and maintenance employees. At all times relevant to this case, Defendant was the Chairman of the UAW.

On March 7, 2003, AM General terminated Plaintiff. As a result of the termination, Plaintiff wanted to file a claim against AM General, but had been advised that he must file a grievance with his union before he could file an action against his employer. (Pl. Comp. pg. 2).

Consequently, on October 23, 2003, Plaintiff, proceeding *pro se*, filed a claim against Defendant in the St. Joseph County Small Claims Court seeking $3,000 in punitive damages. Liberally construing Plaintiff's complaint, he alleges that Defendant breached his duty of fair representation as the Chairman of the UAW by interfering with Plaintiff's right to file a grievance. On November 7, 2003, Defendant removed the case to this Court pursuant to § 301 of the Labor Management Relations Act, as codified in 29 U.S.C. § 185 (2000).

Plaintiff's complaint alerted the UAW that Plaintiff wanted it to file a grievance on his behalf. (Def. Resp., Doc. No. 23, ¶ 3). After receiving the complaint, the UAW filed a grievance protesting Plaintiff's termination. As a result of the grievance process, AM General offered to settle Plaintiff's grievance for $3,000. Questioning why AM General wanted to settle his court case, Plaintiff contacted the UAW's attorney to ask some general questions about the proposed settlement offer. The UAW attorney informed Plaintiff that AM General was offering to settle the grievance, not his court case against Defendant. (Macey Decl. ¶ 5). Plaintiff decided to accept the settlement offer after learning that he ran the risk of receiving less that $3,000. (Pl Mot. ¶ 3).

On July 8, 2004, Plaintiff accepted the $3,000 and signed a general release which purported to:

> release and discharge AM General LLC, UAW Local 5, its Chairman Bruce Schweizer, the International UAW . . . from any and all claims and/or causes of action, known or unknown, which [Plaintiff] may have or could claim to have against any of the Releasees up to and including the date of [his] signing of this General Release.

(Macey Decl. Exh. 4). The release also stipulated that Plaintiff agreed to "withdraw the Grievance, and to dismiss with prejudice all pending lawsuits, charges, or other legal claims that

2

[he] may have against any of the Releasees." (Macey Decl. Exh. 4). Plaintiff read the release and understood that all of his claims filed prior to the day he signed the release would be dismissed. (Pl. Supp. Filing, Doc. No. 34, ¶ 25). On July 9, 2004, Plaintiff received a letter dated July 6, 2004, from the UAW attorney explaining that Plaintiff would be required to sign a general release that would release the UAW and Defendant.

Eight days after signing the general release, on July 16, 2004, Plaintiff filed a motion which was entitled "Motion for Order to Rescind General Release and Turn Matter Over to Arbitration." In his motion, Plaintiff argues that Defendant did not inform Plaintiff that his grievance would have gone to arbitration if he did not sign the release. Plaintiff asserts that he would have received more money if his grievance had gone to arbitration, and thus, this Court should rescind the general release and order that his grievance be submitted to arbitration.

On August 17, 2004, Defendant filed a motion for summary judgment alleging that Plaintiff's claims were barred by the general release. Defendant did not file a notice of summary judgment as required by Lewis v. Faulkner, 689 F.2d 100 (7th Cir. 1982). On August 18, 2004, Plaintiff filed a "Supplemental Filing Alleging Breach of Duty," alleging that Defendant and the UAW breached their duty of fair representation by not disclosing that his grievance could have gone to arbitration. Plaintiff alleges that if he had known about arbitration, he would not have accepted the settlement offer.

The court held oral arguments on Plaintiff's motion to rescind the general release on September 28, 2004. The court also allowed Defendant to file a second motion for summary judgment that complied with Lewis v. Faulkner, 689 F.2d 100 (7th Cir. 1982), which he did on December 30, 2004. Defendant's second motion sought judgment based on three main theories:

3

1) Plaintiff's claims are barred by the general release; 2) Defendant is not a proper party; and 3) Defendant did not breach the duty of fair representation.  This Court has the authority to issue a report and recommendation on all pending motions pursuant to its referral order and 28 U.S.C. § 636(b)(1)(A).

**II.    SUMMARY JUDGMENT STANDARD**

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c); Lawson v. CSX Transp., Inc., 245 F.3d 916, 922 (7th Cir. 2001).  In determining whether a genuine issue of material fact exists, this Court must construe all facts in the light most favorable to the nonmoving party as well as draw all reasonable and justifiable inferences in favor of that party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); King v. Preferred Technical Group, 166 F.3d 887, 890 (7th Cir. 1999).  To overcome a motion for summary judgment, the nonmoving party cannot rest on the mere allegations or denials contained in its pleadings.  Rather, the nonmoving party must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial. Celotex v. Catrett, 477 U.S. 317, 322-23 (1986);  Robin v. Espo Engineering Corp., 200 F.3d 1081, 1088 (7th Cir. 2000).  Where a factual record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing Bank of Ariz. v. Cities Services Co., 391 U.S. 253, 289 (1968)).

### III.   PLAINTIFF'S CLAIMS ARE BARRED BY A VALID GENERAL RELEASE

Eight days after Plaintiff signed the general release, he filed a motion to rescind the general release and pursue arbitration. Plaintiff asserts that the release should be rescinded because Defendant breached his duty of fair representation by not informing him that his grievance was subject to arbitration. On December 30, 2004, Defendant filed a motion for summary judgement stating that all of Plaintiff's claims are barred by the general release.[1]

When a settlement is made, a general release is taken for the purpose of foreclosing further claims. Indiana Bell Telephone Co., Inc. v. Mygrant, 471 N.E.2d 660, 664 (Ind. 1984). A valid release bars a claimant from bringing a subsequent cause of action on the claim he released. McWaters v. Parker, 995 F.2d 1366, 1370 (7th Cir. 1993). The interpretation of a release, like any other contract, is determined by the terms of the particular instrument, considered in light of all facts and circumstances. Prall v. Indiana Nat. Bank, 627 N.E.2d 1374, 1377 (Ind. Ct. App. 1994). In the absence of ambiguity, the court looks only to the instrument to ascertain the parties' intent. Id.

Under Indiana law, parties can rescind a release that was executed as a result of a mutual mistake. McWaters v. Parker, 995 F.2d 1366, 1370 (7th Cir. 1993). Furthermore, a release may be rescinded if there has been constructive fraud or a material misrepresentation. Id. at 1371-72. To establish a material misrepresentation, a plaintiff must prove that a material misrepresentation of a past or existing fact was made which was untrue and known to be untrue by the party

---

[1] Defendant's motion for summary judgment also asserts that judgment in favor of the Defendant is appropriate because Defendant is not a proper party and because Defendant did not breach the duty of fair representation. However, because the general release disposes of Plaintiff's claims, this Court need not address Defendant's alternative arguments.

making it, or else recklessly made, and that another party did in fact rely on the representation and was induced to act to his detriment.  <u>Id.</u>

The unambiguous language of the general release states that Plaintiff agreed to release AM General, UAW Local 5, and Defendant from "any and all claims and/or causes of action, known or unknown" which Plaintiff may have had as of the date he signed the release.  In addition, the release barred any claims that were raised, or those that could have been raised, in connection with Plaintiff's grievance.

Plaintiff's claim alleging that Defendant breached his duty of fair representation by failing to fully inform Plaintiff about the grievance process and the possibility of arbitration falls within the unambiguous language of the release.  Plaintiff's cause of action clearly arose before he signed the release because he is challenging the fairness of the representation during the grievance process.  While Plaintiff may not have learned about arbitration until after he signed the release, the release explicitly bars all claims related to the grievance, regardless if they were known when Plaintiff signed the release.  Therefore, the general release bars Plaintiff from pursuing his claims for breach of duty of fair representation in connection with the handling of his grievance.

As Plaintiff's claims are barred by the general release, the only way Plaintiff's case may proceed is if this Court rescinds the release.  However, in his motion to rescind, Plaintiff does not allege that there was a mutual mistake, constructive fraud, or a material misrepresentation which would allow this Court to rescind the general release because Plaintiff admits that he read and

6

understood what he was signing.[2]  (Pl. Supp. Filing, Doc. No. 34, ¶ 25).  Plaintiff questions whether he made a good bargain by accepting the settlement agreement.  However, as stated in Indiana Bell Telephone Co., Inc. v. Mygrant, 471 N.E.2d 660, 664 (Ind. 1984), the freedom of contract includes the freedom to make a bad bargain.  A bad bargain is simply not the same as a mutual mistake, constructive fraud, or material misrepresentation.

     Plaintiff's main argument in support of his motion to rescind is that Defendant was grossly negligent in failing to inform Plaintiff that his grievance was subject to arbitration. Gross negligence is not akin to constructive fraud or material misrepresentations which require a party to act intentionally or recklessly.  Even assuming that one could argue that Defendant's acts were misrepresentations, the misrepresentations were not material.  In Vaca v. Sipes, 386 U.S. 171, 196 (1967), the Supreme Court held that an individual employee has no absolute right to have a grievance arbitrated under a collective bargaining agreement.  Hence, it was within the union's discretion as to whether it wanted to proceed with arbitration, and thus, the non-disclosure was not a  a material misrepresentation. Therefore, the release is valid and should not be rescinded. As Plaintiff's claims are barred by the valid general release, this Court **RECOMMENDS** that Plaintiff's motion to rescind the release [Doc. No. 20] be **DENIED** and that Defendant's motion for summary judgment [Doc. No. 31] be **GRANTED**.

---

[2]This Court notes that Plaintiff contacted the UAW attorney to ask why AM General wanted to settle his case.  The attorney represented that the UAW was settling the grievance, not the case. After Plaintiff accepted the settlement, the UAW sent Plaintiff a notice informing him that the release would also release Defendant and the UAW.  Plaintiff apparently did not receive this letter until after he had signed the release.  While the sequence of events and the representations made to Plaintiff are troubling, they do not rise to the level of misrepresentations that would allow the rescission of the release because Plaintiff admitted that he understood what he was signing and who he was releasing.  Plaintiff was free to refuse to sign the release once he learned that the release purported to discharge all claims against the Defendant.

**IV.  ANCILLARY MATTERS**

  A.  The UAW is not a Party to this Action

In his motion for summary judgment, Defendant asserts that he is not a proper party in this case.  In response, Plaintiff asserts that he also alleged a claim against the UAW in his supplemental filings, although he technically never amended his complaint.  See e.g. Docket Number 39.  However, even assuming that Plaintiff attempted to amend his complaint to add the UAW as a party, Plaintiff never served the UAW with process.  Thus, the UAW never filed an answer or entered an appearance.  As a result of Plaintiff's failure to effectuate service of process in accordance with Fed. R. Civ. P. 4, the UAW was not properly added as a Defendant in this case.  Any claims Plaintiff may have against the UAW are not before this Court.

  B.  Defendant's First Motion for Summary Judgment

Defendant filed his initial motion for summary judgment on August 17, 2004.  However, the first motion for summary judgment did not contain the Lewis v. Faulkner, 689 F.2d 100 (7th Cir. 1982) *pro se* warning.  On December 30, 2004, Defendant filed his second motion for summary judgment that complied with Lewis v. Faulkner.  Because Defendant's second motion for summary judgment contains the required notice and encompasses Defendant's first motion, this Court **RECOMMENDS** that Defendant's first motion for summary judgment [Doc. No. 24] be **DENIED AS MOOT.**

**V.  CONCLUSION**

For the forgoing reasons, this Court **RECOMMENDS** that Plaintiff's motion to rescind the general release [Doc. No. 20] be **DENIED** and that Defendant's second motion for summary judgment [Doc. No. 31] be **GRANTED** with judgment entered in favor of Defendant and against

Plaintiff. Furthermore, this Court **RECOMMENDS** that Defendant's first motion for summary judgment [Doc. No. 24] be **DENIED AS MOOT**.

> **NOTICE IS HEREBY GIVEN that within ten (10) days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations. Fed.R.Civ.P. 72(b). FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER. See Thomas v. Arn, 474 U.S. 140 (1985); Lerro v. Quaker Oats Co., 84 F.3d 239 (7th Cir. 1996).**
> **SO ORDERED.**

Dated this 5th day of May, 2005.

>                       s/Christopher A. Nuechterlein
>                       Christopher A. Nuechterlein
>                       United States Magistrate Judge

cc:   Botchkai